UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID MORENC and
BRENDA MORENC

CIVIL ACTION

NO. 19-10605

VERSUS

SECTION: M (2)

ROCHE DIAGNOSTICS CORPORATION
and ABBOTT LABORATORIES d/b/a
ALERE HOME MONITORING, INC.

## ORDER & REASONS

Before the Court is a motion by defendant Roche Diagnostics Corporation ("Roche") to dismiss certain claims in plaintiffs' complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiffs David Morenc ("Morenc") and Brenda Morenc (collectively, "Plaintiffs") respond in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

I. BACKGROUND

This matter concerns damages allegedly caused by a defective medical device. Morenc takes a blood thinning medication to prevent blood clots and his physician prescribed CoaguCheck XS PT test strips ("test strips") manufactured by Roche and its related company, Abbott Laboratories d/b/a Alere Home Monitoring, Inc. ("Abbott"), to monitor Morenc's response to the medication.[3] On October 3, 2018, Morenc was diagnosed as having had a stroke after presenting to the emergency room with slurred speech and a left facial droop.[4] On November 8, 2018, Morenc received an email from Abbott informing him that the test strips had been recalled because they

---

[1] R. Doc. 39.
[2] R. Doc. 40.
[3] R. Doc. 37 at 1-2.
[4] *Id.* at 2.

were providing inaccurate test results due to a recalibration of the product that occurred in January 2018.[5] The test strips used by Morenc were in the defective lot number that was included in the recall.[6]

On May 21, 2019, Plaintiffs filed this suit against Roche and Abbott alleging that Morenc's stroke was caused by defendants' defective test strips.[7] Plaintiffs assert causes of action arising under Louisiana law for negligence, redhibition, and the Louisiana Products Liability Act (the "LPLA"), La. R.S. 9:2800.51, *et seq.*, seeking monetary damages along with attorney's fees.[8] After Roche filed its first motion to dismiss,[9] Plaintiffs filed their third supplemental and amending complaint to address some of the pleading deficiencies raised in Roche's motion.[10] The Court then dismissed as moot Roche's first motion to dismiss and ordered Roche to re-file its motion to dismiss directed to all of Plaintiffs' complaints as amended.[11] Thereafter, Roche filed the instant motion to dismiss.[12]

## II.   PENDING MOTION

Roche seeks dismissal of Plaintiffs' negligence claims arguing that they fall outside the exclusive theories of manufacturer liability permitted under the LPLA.[13] Roche also seeks dismissal of Plaintiffs' redhibition claim as barred by the LPLA because the claim seeks relief for personal injuries as opposed to economic loss.[14] Roche argues further that Plaintiffs' LPLA claims

---

[5] *Id.*
[6] *Id.*
[7] R. Doc. 1. On September 26, 2019, Plaintiffs dismissed without prejudice their claims against Abbott. R. Doc. 28.
[8] *Id.* at 5-7.
[9] R. Doc. 16.
[10] R. Doc. 37. Plaintiffs' filed their first and second supplemental and amending complaints to cure deficiencies in the jurisdictional allegations. R. Doc. 11.
[11] R. Doc. 38.
[12] R. Doc. 39.
[13] R. Doc. 39-1 at 9-11.
[14] *Id.* at 11-12.

for breach of express warranty and inadequate warning should be dismissed because they are not sufficiently pleaded, and Plaintiffs cannot recover attorney's fees for their LPLA claims.[15]

In opposing the motion, Plaintiffs contend that they have adequately stated claims for negligence and under all LPLA theories of recovery.[16] Plaintiffs also argue that they have sufficiently pleaded a claim for redhibition seeking the return of the purchase price of the test strips and attorney's fees.[17] In the alternative, Plaintiffs contend that they should be permitted an opportunity to amend their complaint yet again to address any pleading deficiencies.[18]

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

---

[15] *Id.* at 6 & 12-15. The motion does not address Plaintiffs' LPLA claims based on unreasonably dangerous construction/composition or design. R. Doc. 39 at 2.
[16] R. Doc. 40 at 1 & 6-9.
[17] *Id.* at 10.
[18] *Id.*

3

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Louisiana Products Liability Act

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52 ("A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."); *see also Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) ("negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA"). Further, attorney's fees are not recoverable under the LPLA. La. R.S. 9:2800.53(5). Thus, Roche's motion to dismiss is GRANTED as to Plaintiffs' claims for negligence and for attorney's fees incurred in pursuing their LPLA claims.

5

Under the LPLA, a plaintiff may only recover against a manufacturer "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." *Id.* 9:2800.54(A). The statute further limits recovery for damage resulting from "unreasonably dangerous" characteristics to four theories of liability: (1) unreasonably dangerous in construction or composition;[19] (2) unreasonably dangerous in design;[20] (3) unreasonably dangerous for failure to provide an adequate warning;[21] and (4) unreasonably dangerous for nonconformity to an express warranty.[22] *Id.* 9:2800.54(B). The unreasonably dangerous characteristic "must exist at the time the product left the control of its manufacturer."[23] *Id.* 9:2800.54(C). The plaintiff bears the burden of proving these elements of liability under the LPLA. *Id.* 9:2800.54(D); *see also Johnson v. Transwood, Inc.*, 2015 WL 5680369, at *3 (M.D. La. Sept. 25, 2015) (an unreasonably dangerous condition is not presumed solely because an injury occurred).

### 1. Unreasonably dangerous because of inadequate warning

Under the third theory of LPLA liability, a manufacturer must exercise reasonable care to give an adequate warning concerning a product that "possessed a characteristic that may cause damage" at the time the product left its manufacturer's control. A manufacturer is liable for failure to exercise reasonable care in warning of the characteristic and its danger to users and handlers of the product. La. R.S. 9:2800.57(A). A manufacturer has a continuing duty to provide an adequate warning after the product leaves its control when the manufacturer obtains actual knowledge about "a characteristic that may cause damage and the danger of such characteristic, or who would have

---

[19] *See* La. R.S. 9:2800.55.
[20] *See id.* 9:2800.56.
[21] *See id.* 9:2800.57.
[22] *See id.* 9:2800.58.
[23] Roche does not contest that it is the manufacturer of the test strips.

6

acquired such knowledge had [it] acted as a reasonably prudent manufacturer." *Id.* 9:2800.57(C). However, a manufacturer is not liable for failing to warn when:

> (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
>
> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

*Id.* 9:2800.57(B).

Louisiana courts apply the "learned intermediary doctrine" in analyzing LPLA failure-to-warn claims involving medical devices, such as the test strips. *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991). "Under this doctrine, the manufacturer has no duty to warn the patient, but need only warn the patient's physician." *Id.* To prevail on such a claim a plaintiff must show: "(1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury." *Id.* (footnote omitted). Further, "[b]ecause the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Id.* at 1098-99 (footnote omitted).

> With respect to inadequate warning, Plaintiffs allege:
>
> Upon information and belief, the CoaguChek XS PT Test Strips produced by [Roche] and used by [Morenc] w[ere] defective and unreasonably dangerous when [they] left the possession of [Roche] in that [they] contained warnings insufficient to alert [Morenc] and/or [Morenc's] healthcare providers of the dangerous risks and reactions associated with the subject product.

7

(a)

> Defendant manufacturer's Test Strips were inherently defective when they left the possession of manufacturer. [Roche] did not provide any warning to Mr. Morenc of the defective nature of its test strips prior to Mr. Morenc's use of the test strips. It was not until November 8, 2018, following Mr. Morenc suffering a stroke, that Mr. Morenc received an E-mail from "Alere Home Monitoring" notifying him that [Roche] issued a[n] "Urgent Medical Device Recall" (UMDR) for its CoaguChek XS PT Test Strips.[24]

These allegations are sufficient for Plaintiffs' failure-to-warn claim to survive a motion to dismiss. Plaintiffs allege that Roche failed to warn Morenc's physician of the risk that the test strips did not work properly and that such failure to warn was a cause of his stroke.[25] Therefore, Roche's motion to dismiss is DENIED as to Plaintiffs' inadequate-warning claim under the LPLA.

### 2. Unreasonably dangerous because of nonconformity to express warranty

Section 2800.58 of the LPLA defines a product as unreasonably dangerous "when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." La. R.S. 9:2800.58. To establish a breach-of-express-warranty claim, a plaintiff must show that: (1) the manufacturer made an express warranty about the product; (2) the express warranty induced the plaintiff to use the product; (3) the product failed to conform to that express warranty; and (4) the plaintiff's damage was proximately caused because the express warranty was untrue. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002). Under the LPLA, an "express warranty" is "a representation, statement of alleged fact or promise about a product … that represents, affirms or promises that the product … possesses specified characteristics or qualities or will meet a

---

[24] R. Doc. 37 at 3.
[25] *Id.*

8

specified level of performance." La. R.S. 9:2800.53(6). A "general opinion about or general praise of a product" does not qualify as an express warranty. *Id*.

Plaintiffs' LPLA breach-of-warranty allegations are insufficient to state a claim. Plaintiffs allege that Roche warranted that the test strips were safe and fit for use.[26] Plaintiffs do not specify the contents of the alleged "express warranty" or how the representations made in it were untrue. Further, there are no allegations regarding what level of performance was promised but not achieved. Thus, because Plaintiffs' breach-of-warranty claim constitutes little more than a threadbare recital of the elements of the cause of action, supported by mere conclusory statements, *see Iqbal*, 556 U.S. at 678, it does not state a claim under the LPLA. *See, e.g., Pellegrin v. C.R. Bard, Inc.*, 2018 WL 3046570, at *5-6 (E.D. La. June 20, 2018) (dismissing claim because allegations that defendants represented product was safe to use and did not produce side effects were vague and conclusory and "failed to specify the contents of defendants' representations or how they were factually untrue or inadequate," and noting that "[w]hile plaintiff is not required to identify the exact language used in the warranty, she must specify the warranty in question and explain why the warranty is untrue") (collecting cases). However, the Court will allow Plaintiffs an opportunity to seek leave to file an amended complaint aimed at curing the pleading deficiency.[27]

---

[26] R. Doc. 37 at 4-5 (Roche "warranted that its Test Strips safely monitored [Morence]'s blood clotting in response to blood thinner medication" and "that the test strips would safely perform its intended function").

[27] Rule 15 allows a court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has recognized that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of the pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Court is mindful that Plaintiffs have already filed three amended complaints and will not allow a fifth if the fourth fails to cure the pleading deficiencies.

### C. Redhibition and the LPLA

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice." *Alston v. Fleetwood Motor Homes of Ind. Inc.*, 480 F.3d 695, 699 (5th Cir. 2007) (citing La. Civ. Code art. 2520). The LPLA preserves "redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002). To prevail, a plaintiff "must prove: (1) the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; (2) that the defect existed at the time he purchased the thing, but was neither known or apparent to him; (3) that the seller was given the opportunity to repair the defect." *Alston*, 480 F.3d at 699 (internal quotation marks and citation omitted).

Roche urges dismissal of Plaintiffs' redhibition claim because it limits the relief sought to personal injuries, not economic loss. Plaintiffs allege in their complaint that the test strips had a redhibitory defect in producing inaccurate results which rendered them useless and Morenc would not have purchased them had he known.[28] In their opposition to the motion, Plaintiffs clarify that they seek return of the purchase price as a remedy for the redhibitory defect, asking the Court to make such an inference from the factual allegations Plaintiffs have pleaded.[29] This calls for too expansive a reading of Plaintiffs' allegations. Nevertheless, here too the Court will allow Plaintiffs an opportunity to seek leave to file an amended complaint aimed at curing the pleading deficiency in this claim.

---

[28] R. Doc. 1 at 5.
[29] R. Doc. 40 at 10.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Roche's motion to dismiss (R. Doc. 39) is GRANTED IN PART as to Plaintiffs' negligence claim and their claim for attorney's fees incurred in pursuing the LPLA claims, and these claims are hereby dismissed.

IT IS FURTHER ORDERED that Roche's motion to dismiss (R. Doc. 39) is DENIED IN PART as to Plaintiffs' inadequate-warning claim under the LPLA.

IT IS FURTHER ORDERED that Plaintiffs have fourteen (14) days from the date of this Order & Reasons to seek leave of court to file a fourth supplemental and amending complaint aimed at curing the pleading deficiencies addressed herein as to Plaintiffs' breach-of-express-warranty claim under the LPLA and their redhibition claim. If Plaintiffs fail to correct the pleading deficiencies in the allotted time, Roche's motion to dismiss (R. Doc. 39) will be GRANTED as to these claims.

New Orleans, Louisiana, this 13th day of December, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE